UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAROL BRODIE,

      Plaintiff,

   – against –

GREEN SPOT FOODS, LLC, *d/b/a*
BETTER THAN FOODS USA,
AMAZON.COM SERVICES LLC,
"JOHN DOES 1–10," *and* "ABC CORPS.
1–10" *(the last two being fictitious designations)*,

      Defendants.

**OPINION & ORDER**

20 Civ. 1178 (ER)

Ramos, D.J.:

   Carol Brodie brings this action against Green Spot Foods, LLC ("Green Spot"), Amazon.com Services LLC ("Amazon"), John Does 1–10, and ABC Corps. 1–10 for injuries she sustained after consuming a product known as Better than Pasta, which she purchased on Amazon's website. Before the Court is Amazon's motion to dismiss the negligence, breach of implied and express warranty, deceptive practices, and false advertising claims against it in the second amended complaint ("SAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 69. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

**I. BACKGROUND**

   Green Spot manufactures, packages, advertises, and sells "Better than Pasta" products. Doc. 68 ¶¶ 23, 28–29. These products are pasta substitutes whose primary ingredient is a root plant called konjac. *Id.* ¶ 10. When consumed, konjac swells from its original size in the human digestive tract and may become indigestible. *Id.* ¶¶ 17, 19. It may also cause choking and stomach or intestinal blockage. *Id.* ¶ 19. These dangers are "generally well-known" and have led the U.S. Food and Drug Administration ("FDA"), Health Canada (a similar regulatory body), the European Commission, and other food

safety regulatory bodies to ban certain foods containing konjac or issue warnings about its risks. *Id.* ¶ 20–21. While Better than Pasta's packaging states that the food is "made from organic Konnyaku flour, from the root of an ancient Japanese organic plant called Konjac," *id.* ¶ 11, the packaging does not provide warnings about konjac's purported risks, *id.* ¶ 22.

Green Spot distributes and sells Better than Pasta on Amazon.com, a website operated by Amazon. *Id.* ¶¶ 26, 31. In order to sell its products on the website, Green Spot assented to the Amazon Services Business Solutions Agreement ("BSA"). *Id.* ¶ 33. The BSA grants Amazon a "license to use, reproduce, perform, display, distribute, adapt, modify, re-format, create derivative works of, and otherwise commercially . . . exploit in any and all" of a third-party seller's "materials," which consist of all "[t]rademarks, [c]ontent, . . . [p]roduct information . . . and other items or information provided or made available by" the third-party seller. *Id.* ¶ 34. The BSA also gives Amazon "sole discretion to determine the content, appearance, design, functionality and all other aspects of the Amazon sites, including by redesigning, modifying, removing or restricting access to any of them, and by suspending, prohibiting or removing any listing." *Id.* ¶ 37. According to Brodie, Green Spot initially created all advertising for the product, but Amazon also marketed and advertised the product on Amazon.com. *Id.* ¶¶ 29, 31, 48. Green Spot also participates in a program called Fulfillment by Amazon ("FBA"), under which it stores Better than Pasta in Amazon's warehouses and Amazon ships the product to customers directly. *Id.* ¶ 44.

Amazon offers certain guarantees to customers with respect to Better than Pasta. First, for products sold by third parties such as Green Spot, Amazon offers the A-Z Guarantee ("Guarantee"), which guarantees that customers can obtain a refund if a third-party item "was damaged, defective, materially different, or you changed your mind." *Id.* ¶ 40. Second, Amazon designated Better than Pasta as an "Amazon's Choice"

product on the website. *Id.* ¶ 41. Brodie alleges that this designation "specifically promoted and/or guaranteed the quality of Better than Pasta products." *Id.*

Amazon.com has a feature allowing customers to leave reviews of the products sold on the website, and both Amazon and third-party sellers are notified when a review is posted and what the review says. *Id.* ¶¶ 52–53. According to Brodie, Green Spot and Amazon were made aware of the dangers of Better than Pasta because they received numerous customer complaints about the health issues caused by consuming the product. *Id.* ¶¶ 51, 54. The SAC cites to thirteen such complaints. *Id.* ¶ 54. For example, one individual complained, "I tried this pasta for the first time last night, and today I'm having SEVERE intestinal cramps. Buyer beware! I did a web search and discovered some Konjac root products have been banned because they can actually cause an intestinal blockage."[1] *Id.* ¶ 54(g). Brodie alleges that Green Spot may have directed Amazon to remove other negative complaints about the product. *Id.* ¶ 55. Brodie also alleges that Green Spot pays or incentivizes individuals to leave "false positive reviews" with Amazon's knowledge, and Amazon allows this practice to occur without deleting these reviews. *Id.* ¶¶ 59–60.

Brodie, a resident of New York, purchased multiple bags of Better than Pasta from Amazon.com on or about June 26, 2019. *Id.* ¶ 61. Hours after she prepared the product on July 22, 2019, Brodie felt sick in her stomach, felt her stomach expand, and developed cramps. *Id.* ¶ 63. The following day, she went to the emergency room and was then admitted to New York-Presbyterian Hospital, where she remained for three days. *Id.* ¶¶ 64–66. She was released on July 25, 2019 but suffered other physical and financial injuries for several months after consuming the product. *Id.* ¶¶ 66–83. Brodie also left a negative review on Amazon.com complaining about her injuries. *Id.* ¶ 56.

---

[1] Of the 13 negative reviews quoted in the SAC, only this one references the word konjac.

Brodie filed suit on February 11, 2020. Doc. 1. Her initial complaint asserted eight claims against Green Spot, Amazon, and various other defendants: (1) negligence, (2) breach of implied warranty, (3) breach of express warranty, (4) consumer fraud through deceptive practices and false advertising, (5) common law fraud, (6) unjust enrichment, (7) strict liability based on design or manufacturing defect, and (8) strict product liability based on failure to warn. After an Order of this Court directing Brodie to clarify the basis for the court's subject matter jurisdiction, Doc. 11, she amended her complaint on February 19, 2020, and alleged the citizenship of each named defendant. Doc. 19. The same defendants and claims were retained. *See id.* On June 29, 2020, Brodie amended her complaint for a second time. Doc. 68. The SAC names only Green Spot, Amazon, and the fictitious John Does 1–10 and ABC Corps. 1–10 as defendants. Further, the SAC retains all claims except common law fraud and unjust enrichment. On June 30, 2020, Amazon filed the instant motion to dismiss four of the five claims Brodie asserts against it: negligence, breach of warranty, deceptive practices, and false advertising. Doc. 69.

## II.  LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court is required to "accept as true the facts alleged in the [c]omplaint, drawing all reasonable inferences in favor of the plaintiff" to determine whether plaintiff has properly stated a claim upon which relief can be granted. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). But this requirement does not apply to legal conclusions, recitals of the elements of a cause of action, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007)). Instead, a complaint must contain sufficient factual matter to state a claim to relief that is plausible—not merely possible—on its face. *Id.* at 678 (citing *Twombly*, 550 U.S. at 570). On a motion to dismiss, the court may consider facts stated in the complaint, appended exhibits, documents incorporated by reference, and matters of

which judicial notice may be taken. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

### III. DISCUSSION

#### A. Negligence (Count I)

To state a claim of negligence under New York law,[2] a plaintiff must show "(1) that [defendant] owed [her] a duty, or obligation, recognized by law, (2) a breach of the duty, (3) a reasonably close causal connection between [defendant's] conduct and the resulting injury and (4) loss or damage resulting from the breach." *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997) (internal quotation marks omitted) (citing *Becker v. Schwartz*, 46 N.Y.2d 401, 410 (1978)). Amazon contends that, as a retailer, its duty to Brodie was minimal and required only "an ordinary inspection" of Better than Pasta.[3] Doc. 69-1 at 8.[4] It claims that the product's alleged defects, such as its potential to "swell[] in the human digestive tract" and cause other gastrointestinal issues, could have been discovered only through expert analysis of the product's contents, an act above and beyond an ordinary inspection. Doc. 80 at 3.

Amazon correctly notes that New York law imposes different duties upon manufacturers of a product and its retailers, particularly with respect to sealed packages. A manufacturer may be liable for injuries sustained by a purchaser as a result of a manufacturing flaw, defective design, or lack of adequate warnings for the use of the product. *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 237 (1998). With respect to such warnings, "[a] manufacturer has a duty to warn against *latent* dangers resulting from foreseeable uses of its product of which it knew or should have known." *Id.* (emphasis

---

[2] Neither party contests that New York law governs this case. *See Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.").

[3] For purposes of this motion, both parties agree that Amazon is a retailer.

[4] Citations to pages in Amazon's memorandum in support of the motion to dismiss, Doc. 69-1, and the parties' subsequent submissions refer to the ECF stamp page numbers.

added) (citations omitted).  By contrast, a retailer is only "under a duty to inspect for and to discover such defects as a reasonable physical inspection would disclose." *Naples v. City of New York*, 309 N.Y.S.2d 663, 666 (2d Dep't 1970).  If the retailer does not conduct such an inspection, it can be held liable for defects it could have discovered through an inspection when the product was in its possession.  *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 523 (S.D.N.Y. 2003) (citing *Sideris v. Simon A. Rented Servs., Inc.*, 678 N.Y.S.2d 771, 772 (2d Dep't 1998)).  When a product is sealed, a retailer does not have a duty to test the contents of the package for defects and, under a negligence theory of liability, "cannot be held liable for injuries sustained from the contents of [the] sealed product even though a test might have disclosed a potential danger."  *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 422 (S.D.N.Y. 2011) (quoting *Brownstone v. Times Square Stage Lighting Co.*, 333 N.Y.S.2d 781, 782 (1st Dep't 1972)).

In *Porrazzo*, the plaintiff purchased several sealed cans of tuna fish at a grocery store every week for almost three years, the consumption of which he alleged caused him chest pains, heart palpitations, sweatiness, dizziness, and lightheadedness two or three times per week.  *Id.* at 409.  Testing later revealed that the plaintiff had more than double the normal level of mercury in his blood.  *Id.*  Notably, the cans of "tuna fish did not provide any warning that [they] contained mercury."  *Id.*  Plaintiff attributed this level of mercury, and the attendant health problems, to his consumption of the tuna fish and sued both the manufacturer and the grocery store.  *Id.* at 409–10.  The court dismissed the negligence and breach of implied warranty claims against the grocery store because the allegedly injurious presence of mercury could not have been discovered through ordinary inspection of the sealed product, and the grocery store had no obligation to test its contents.  *Id.* at 422.

However, *Porrazzo* is readily distinguishable.  Better than Pasta's alleged defect is that it contains konjac, which is "not always safe for human consumption."  Doc. 68

6

¶¶ 10, 16.  But unlike the mercury in the tuna fish, the presence of konnyaku flour is stated on the front of Better than Pasta's packaging and a paragraph in the back of the product explains that konnyaku flour comes from konjac.  *Id.* at 34–35.  As a retailer, Amazon had a duty to conduct an ordinary inspection of the product while in its possession, *Pelman*, 237 F. Supp. 2d at 523, and such an inspection would have revealed that the product contained konjac.  Because Brodie alleges that konjac's dangers are "well-known" as a result of the bans and warnings issued for other products containing konjac, it is adequately pleaded that Amazon was put on notice of Better than Pasta's potential danger.  *See In re Mattel*, 588 F. Supp. 2d 1111, 1118–19 (C.D. Cal. 2008) (holding that defendant adequately pleaded negligence where retailer knew or had reason to know that sealed product containing lead paint was dangerous as a result of recalls of similar products); *see also Mirchandani v. Home Depot U.S.A., Inc.*, 470 F. Supp. 2d 579, 582 (D. Md. 2007) (same).  Further, Brodie's allegation that the negative reviews posted on the website made Amazon aware of konjac's potential to cause digestion issues and other injuries is uncontested.  *See* Doc. 68 ¶¶ 51, 53–54.  These reviews included complaints that Better than Pasta caused digestion issues and symptoms such as headaches and diarrhea.  *Id.* ¶ 54.  Put together, the product's labeling and the customer complaints lead to a plausible inference that Amazon knew or had reason to know of the product's potential to cause injury when consumed because it contained konjac.  *See Porrazzo*, 822 F. Supp. 2d at 420.  Thus, at this procedural juncture, Brodie has sufficiently alleged a negligence claim against Amazon.

    **B.  Breach of Implied Warranty (Count II)**

    Brodie also claims that Amazon breached the implied warranty of merchantability with respect to the Better than Pasta it sold through its online marketplace.  Under the New York Uniform Commercial Code ("NY UCC"), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  NY UCC § 2-314(1); *see also Mongiello's Italian Cheese*

7

*Specialties, Inc. v. Euro Foods Inc.*, No. 14 Civ. 2902 (DF), 2018 WL 4278284, at *37 (S.D.N.Y. Mar. 30, 2018) (recognizing an implied warranty of merchantability in contract for sale of deli meats). To be merchantable, goods "must be . . . fit for the ordinary purposes for which such goods are used; and . . . conform to the promises or affirmations of fact made on the container or label if any." NY UCC § 2-314(2). A seller of food products, including a retailer, is bound by the implied warranty that foods sold are fit for human consumption and therefore merchantable. *Mongiello's Italian Cheese*, 2018 WL 4278284, at *37 (citing *Hohn v. S. Shore Serv., Inc.*, 529 N.Y.S. 2d 129, 130 (2d Dep't 1988)).

Brodie alleges that Better than Pasta was not safe for its intended and stated purpose of human consumption. Doc. 68 ¶¶ 110–11. Amazon counters that, as a retailer, it cannot be held liable for the product's defects because they could have been discovered only through testing or other expert analysis, but Amazon had no duty to inspect the contents of the product because it was sold in a sealed package.

As with the negligence claim, Amazon is correct that a retailer is not liable for breach of the implied warranty when latent defects that it could not have discovered through reasonable inspection cause injury. *Porrazzo*, 822 F. Supp. 2d at 422. But again, that rule does not shield Amazon from liability, as ordinary inspection would have revealed that Better than Pasta contained konjac, an ingredient whose dangers are "well-known" and the subject of numerous negative reviews on Amazon.com. Doc. 68 ¶¶ 20–21, 51, 54. These allegations lead to a plausible inference that Amazon could have discovered through ordinary inspection that Better than Pasta was potentially unsafe for human consumption.[5] As such, Brodie has adequately stated a claim.

---

[5] The question whether the product was, in fact, reasonably safe or unsafe for its intended use is one for the jury. *Lugo v. LJN Toys, Ltd.*, 75 N.Y.2d 850, 852 (1990).

8

### C. Breach of Express Warranty (Count III)

In New York, a seller creates an express warranty by, *inter alia*, making an affirmation or promise with regard to a good or product sold that becomes part of the basis of the bargain. *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (citing NY UCC § 2-313(1)(a)). To state a claim for breach of express warranty, "a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Id.* (citations omitted). The express terms of the alleged warranty must be clearly set forth in order for the claim to survive a motion to dismiss. *Goldin v. Smith & Nephew, Inc.*, No. 12 Civ. 9217 (JPO), 2013 WL 1759575, at *6 (S.D.N.Y. Apr. 24, 2013). Brodie alleges that Amazon made two express warranties that were breached: (1) the designation of Better than Pasta as an Amazon's Choice product and (2) the Guarantee. Doc. 68 ¶¶ 39–41. Amazon contends that neither of them amounts to an express warranty.

With respect to the Amazon's Choice designation, Brodie does not allege facts supporting an inference that the designation is either an affirmation of fact or a promise constituting an express warranty. While no formal wording is necessary to create an express warranty, there must be a representation of fact or specific promise about the product, rather than an expression of opinion. NY UCC § 2-313(2); *see also Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 Civ. 1851 (NGG) (RML), 2006 WL 2524187, at *17 (E.D.N.Y. Aug. 30, 2006) (citing *Fairbank Canning Co. v. Metzger*, 118 N.Y. 260, 265 (1890)). Accordingly, courts in this District have held that phrases on packaging and advertisements such as "Premium Quality," "Popular," and "Most Dependable" are mere puffery and not express warranties, as no reasonable consumer could rely on them as statements of fact. *Anderson v. Bungee Int'l Mfg. Corp.*, 44 F. Supp. 2d 534, 541 (S.D.N.Y. 1999) (rejecting "Premium Quality" as a warranty);

*Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362 (AGS), 1996 WL 274018, at *6–7 (S.D.N.Y. May 22, 1996) (rejecting "Popular" and "Most Dependable" as warranties). Here, the only allegation about the Amazon's Choice designation is that Amazon promoted "the quality of Better Than Pasta products by identifying it as an 'Amazon's Choice' Product on their website." Doc. 68 ¶ 41. Brodie does not allege any of the specific terms associated with the designation, such as a specific affirmation of fact or promise; without this information, such a vague phrase is readily classified as, at most, a statement of opinion. *See Anderson*, 44 F. Supp. 2d at 541. Thus, the Amazon's Choice designation does not serve as a basis for an express warranty claim.

By contrast, the Guarantee arguably does constitute an express warranty under New York law. As Brodie alleges, the Guarantee "allows the customers to obtain a refund from Amazon if an item sold by a third part [*sic*] seller 'was damaged, defective, materially different, or you changed your mind.'" Doc. 68 ¶ 40. New York courts consider this sort of guarantee—where a seller promises to repair or refund a product if defects are found by the purchaser—as constituting an express warranty.[6] *See, e.g.*, *Hole v. Gen. Motors Corp.*, 442 N.Y.S.2d 638, 640 (3d Dep't 1981) (holding that seller's promise to repair manufacturing defects constituted an express warranty).

Nevertheless, Brodie does not allege facts supporting a claim that Amazon breached the Guarantee. In order to breach this warranty, Amazon would have had to refuse to refund Brodie for her purchase of Better than Pasta upon a valid request. *See id.* (holding that the express warranty promising vehicle repairs was not breached because plaintiff refused manufacturer's multiple offers to repair defects). Here, Brodie does not allege that she ever sought a refund from Amazon; the only contact she alleges was

---

[6] Amazon cites *Allstate New Jersey Insurance Company v. Amazon.com, Inc.*, No. 17 Civ. 2738 (FLW) (LHG), 2018 WL 3546197, at *3 (D.N.J. July 24, 2018), to support its contention that the Guarantee is not a warranty. The reasoning of that case, however, is unavailing, as it applied New Jersey law.

10

posting a negative review on the product's page on Amazon.com. Doc. 68 ¶ 56. Thus, Brodie fails to assert a claim for breach of the Guarantee.[7]

### D. Deceptive Practices and False Advertising Under N.Y. Gen. Bus. Law §§ 349 and 350 (Count IV)

N.Y. General Business Law ("GBL") § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." GBL § 350 also prohibits false advertising in the conduct of business, trade, or commerce in New York. False advertising is defined as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." *Id.* § 350-a(1). To state a claim under either section, a plaintiff must show "[1] that the challenged act or practice was consumer-oriented; [2] that it was misleading in a material way; and [3] that the plaintiff suffered injury as a result of the deceptive act." *O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 529 (S.D.N.Y. 2018) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)). Misleading representations or omissions are those "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (internal quotation marks omitted); *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (same). Brodie alleges that Amazon misled consumers about the safety of Better than Pasta through product advertising, deleted negative customer reviews posted on Amazon.com, and "knowingly allow[ed] Green Spot to publish false positive reviews." Doc. 68 ¶¶ 23, 31, 55, 59–60. The Court addresses the allegations about false advertising and customer reviews separately.

---

[7] Amazon also contends that the Guarantee does not apply to Brodie's purchase of Better than Pasta. Specifically, Amazon argues that the Guarantee only promises a refund under certain conditions when a product shipment was fulfilled by a third-party seller, but Brodie has alleged that the product was shipped by Amazon. Doc. 80 at 3. Because the Court finds that the Brodie fails to state a claim for breach of the Guarantee even if the Guarantee applied, it does not address this argument.

11

1. *Better than Pasta Advertising*

Amazon's defense of the false advertising claim is two-fold. First, Amazon argues that it did not create any of the Better than Pasta advertising that serves as the basis for Brodie's claim, thereby cutting the causal connection required between Brodie's injury and some misrepresentation made by Amazon. *Tears v. Bos. Sci. Corp.*, 344 F. Supp. 3d 500, 516 (S.D.N.Y. 2018), *reconsideration denied*, No. 17 Civ. 9793 (AJN), 2019 WL 2866847 (S.D.N.Y. July 3, 2019). Second, it contends that Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, shields it from liability for injuries caused by advertising content created solely by Green Spot or other defendants but published on Amazon's website.

The Court need not determine whether Amazon would be liable under GBL § 350 because the CDA nevertheless bars recovery. The CDA states that "[n]o provider . . . of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *Id.* § 230(c)(1). Immunity under the CDA applies if a defendant "(1) is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat [the defendant] as the publisher or speaker of that information." *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (internal quotation marks omitted). There is general consensus among the circuits that the CDA "should be construed broadly in favor of immunity" and a defendant is only deemed a content provider if it "developed third-party content [by] . . . directly and materially contribut[ing] to what made the content itself unlawful." *Force v. Facebook, Inc.*, 934 F.3d 53, 64, 68 (2d Cir. 2019). For example, the *Force* court held that Facebook, the online social network platform, was not a provider of content posted by a terrorist organization because it was not alleged that Facebook created it, much less edited or suggested edits. *Id.* at 69–70. And the court in *LeadClick* noted that the CDA bars liability for the exercise of a publisher's "traditional editorial functions—such as deciding

whether to publish, withdraw, postpone or alter content." 838 F.3d at 174 (quoting *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014)).

Courts in this Circuit have not yet addressed application of the CDA to Amazon as a retailer, but courts in other circuits have done so and barred claims against Amazon for permitting injurious or prohibited products on its platform without adding warnings. *See, e.g.*, *McMillan v. Amazon.com, Inc.*, 433 F. Supp. 3d 1034, 1045 (S.D. Tex. 2020) ("[A]mazon cannot be held liable for taking insufficient precautions to prevent a third-party vendor from lying, or omitting information, about the defect or dangers of [a product]."); *Oberdorf v. Amazon.com Inc.*, 930 F.3d 136, 153 (3d Cir.) ("[T]o the extent that Oberdorf is alleging that Amazon failed to provide or to edit adequate warnings regarding the use of the [product], we conclude that that activity falls within the publisher's editorial function. . . . For that reason, these failure to warn claims are barred by the CDA."), *reh'g granted*, 936 F.3d 182 (3d Cir. 2019).

In line with these cases, the Court finds that Amazon is immune under the CDA. The parties do not dispute that Amazon qualifies as a provider of an interactive computer service. Instead, the question is whether Amazon can be considered an information content provider with respect to Better than Pasta's advertising, and the Court finds that it is not. There is insufficient factual pleading supporting the plausible inference that Amazon itself created or edited any of the Better than Pasta advertising content. Brodie alleges that Green Spot is "the primary entity responsible for" the product's advertising and manufactured, packaged, and initially created all advertising for the product. Doc. 68 ¶¶ 23, 28–29. Further, while Brodie asserts that the BSA handed Amazon editorial control over what Green Spot materials were published, *id.* ¶¶ 33–37, 48, Brodie does not allege that Amazon actually exercised this control to alter or modify advertising materials received from Green Spot, nor alleges facts giving rise to such an inference. Thus, Brodie's allegations resemble "the typical case, [in which] plaintiffs seek to hold the interactive computer service liable for publishing the content of a third party (or failing to

delete content of that party), and immunity from liability under (c)(1) is found in that context." *Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 602 (S.D.N.Y. 2020) (citing *Force*, 934 F.3d at 65), *appeal docketed*, No. 20-616 (2d Cir. Feb. 18, 2020). Therefore, Brodie fails to state a claim for false advertising for which she would be entitled to relief.

    *2. Reviews on Amazon.com*

Amazon argues that the consumer fraud claim with respect to customer reviews on Amazon.com should be dismissed because the relevant allegations are made "upon information and belief" and are not supported by sufficient factual matter. Doc. 80 at 5–6. Specifically, Brodie alleges:

> 55. Upon information and belief, there may have been other negative complaints regarding the ill health effects of Better Than Pasta Products pre-dating the incident at issue in this litigation which were removed by Amazon . . . at the request of Green Spot . . . .
>
> 59. Upon information and belief, as is common in many online retail situations, Green Spot . . . pays or otherwise incentivizes individuals and/or companies to leave false positive reviews on Amazon's website to counteract the negative reviews of their products . . . .
>
> 60. Upon information and belief, Amazon . . . is aware of this practice of leaving false positive reviews on their website, but does nothing to curtail it.

Doc. 68 ¶¶ 55, 59–60.

Courts in this Circuit look unfavorably upon conclusory pleadings made on information and belief, *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 526–527 (S.D.N.Y. 2013) (dismissing allegations made upon information and belief where nothing was offered to support their belief "but conjecture and speculation"), especially with regard to consumer fraud claims such as those under GBL § 349, *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 460 (S.D.N.Y. 2014) (citing *Woods v. Maytag Co.*, No. 10 Civ. 559 (ADS) (WDW), 2010 WL 4314313, at *15–16 (E.D.N.Y. Nov. 2, 2010), and *Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co.*, 834 F. Supp. 605, 610 (E.D.N.Y. 1993)). When allegations are made upon information and belief, the plaintiff must support them

by offering facts upon which that belief is founded.  *JBCHoldings*, 931 F. Supp. 2d at 527.

Here, Brodie's allegations upon information and belief that Amazon took down negative reviews and allowed Green Spot to put up positive reviews of Better than Pasta lack supporting facts indicating why Brodie believes them.  Although Brodie alleges that it is common for third-party sellers to pay for false positive reviews, Doc. 68 ¶ 59, this fact does not lead to a plausible inference that Amazon itself knows about this practice or permits false reviews to be posted.  And the allegation that there "*may have been* other negative complaints," *id.* ¶ 55 (emphasis added), is similar to the "conjecture and speculation" the *JBCHoldings* court found insufficient, 931 F. Supp. 2d at 527.  Accordingly, these allegations cannot serve as the basis of Brodie's consumer fraud claim.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED with respect to Counts I and II and GRANTED as to Counts III and IV.  The latter claims are dismissed without prejudice.  If Brodie wishes to make a motion for leave to amend her complaint, she must do so by December 30, 2020.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 69.

It is SO ORDERED.

Dated:    November 30, 2020
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.